UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAUSAU UNDERWRITERS
INSURANCE COMPANY,

        Plaintiff,

                              CASE NO. 15-CV-12954
v.                     HON. GEORGE CARAM STEEH

RELIABLE TRANSPORTATION
SPECIALISTS, INC.,
AMARILD USHE, and BURT HOLT,

        Defendants.

-and-

RELIABLE TRANSPORTATION
SPECIALISTS, INC., and AMARILD USHE,

        Counter-Plaintiffs,

v.

WAUSAU UNDERWRITERS
INSURANCE COMPANY,

        Counter-Defendant.
_____/

## ORDER DECLARING CONTROLLING LAW (DOC. 37)

Plaintiff Wausau Underwriters Insurance Company ("Wausau") filed this suit seeking a Declaratory Judgment delineating its obligations under a Commercial Policy issued by Wausau to Reliable Transportation Services ("RTS") for a judgment entered in favor of Burt Holt against RTS and Amarild Ushe in an underlying lawsuit. RTS and Ushe filed counterclaims alleging that Wausau committed bad faith in failing to settle, and that Wausau is therefore responsible for the entire judgment despite the policy limit.

-1-

Now before the court is RTS and Ushe's motion for declaration of controlling law. For the reasons set forth below, this Court declares that Michigan law controls the resolution of both the contract and tort counterclaims asserted by RTS and Ushe.

## A. Background

This case arises out of an Order of Judgment from an underlying lawsuit captioned *Holt v. Amarild Ushe, et al.*, Case No. 12-007202-NI, brought in Wayne County Circuit Court ("Holt Lawsuit"). Burt Holt filed a complaint against RTS, Amarild Ushe, and another party (not part of this action) relating to injuries allegedly suffered by Holt when he was struck by a tractor trailer operated by Ushe. At the time of the accident, Ushe was driving the tractor trailer under the authority of RTS pursuant to an agreement between Ushe and RTS.

RTS and Ushe requested insurance coverage (defense and indemnity) for the Holt Lawsuit pursuant to Commercial Policy No. ATJ-Z91-454319-020, effective April 15, 2010 to April 15, 2011, issued by Wausau to RTS ("Wausau Policy"). Wausau provided both RTS and Ushe with a defense of the Holt Lawsuit. A jury trial was held in May and June of 2015, and the jury reached its verdict on June 7, 2015. On July 28, 2015, the court in the Holt Lawsuit entered a judgment based on the jury's verdict, for the total amount of $8,735,142.35 against RTS and Ushe. The defendants in the Holt Lawsuit filed post-judgment motions in that action and the Holt Lawsuit is currently on appeal to the Michigan Court of Appeals. RTS contends that Wausau acted in bad faith against its insured, RTS and Ushe, by failing to settle within the policy limits and is thus responsible for the entire judgment and additional damages.

In the present action, Wausau seeks a declaration that (1) it has no obligation to satisfy the judgment entered against Reliable above the Wausau Policy's $1,000,000 limit of insurance plus any required ancillary amounts such as interest or other supplementary payments, and (2) the Defendants are precluded from asserting any claim against Wausau for bad faith, extra-contractual remedies, or similar relief relating to the Holt Lawsuit. In their counterclaims, both RTS and Ushe assert Breach of Contract (Count I) and Tortious Conduct and Bad Faith (Count II).

In their Motion for Declaration of Controlling Law, RTS and Ushe request that this Court declare that the substantive law of Indiana controls the resolution of the counterclaims.

## B.  Law and Analysis

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Pedicini v. Life Ins. Co. of Ala.*, 682 F.2d 522, 526 (6th Cir. 2012). RTS's and Ushe's counterclaims assert Breach of Contract (Count I) and Tortious Conduct and Bad Faith (Count II). (Doc # 10, Pg ID 217-21; Doc # 12, Pg ID 225-41.) For the reasons stated below, Michigan choice-of-law rules for contract and tort claims call for the application of Michigan law.

**1. Michigan choice-of-law rules for breach of contract claims**

Michigan generally follows the Restatement (Second) Conflict of Laws when a conflict of law exists in a contract action. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.,* 528 N.W.2d 698 (Mich. 1995)*; Farm Bureau Ins. Co. v. Abalos*, 742 N.W.2d 624 (Mich. Ct. App. 2007). Before *Chrysler*, the longtime view in Michigan had been that contract disputes are subject to the law of the place of contracting. 528 N.W.2d at 702.

In *Chrysler*, the Michigan Supreme Court followed the nationwide trend of adopting the Second Restatement of Conflict of Laws approach to choice-of-law in contract cases. *Id.* Chapter 8 of the Second Restatement covers contract choice-of-law rules, and § 188 specifically addresses contracts that do not contain a choice-of-law provision. Restatement (Second) of Conflict of Laws § 188 (1971). In the absence of an agreement by the parties at the time of contracting as to what law will control, courts should apply the law of the state with the most significant relationship to the transaction and the parties. *Id.* This policy-centered approach is more in line with modern contracting realities, as it acknowledges that multiple states may have interests in an insurance contract and that the interests of a foreign state may outweigh those of the place of contracting. *See id.* at 703.

The Second Restatement contains a provision that applies specifically to insurance contracts. *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 883 F. Supp. 1101, 1106 (E.D. Mich. 1995). Section 193 provides that the principal place of the insured risk during the term of the policy is the most important factor to the determination of which state's law to apply. *Id.* Comment (b) to § 193 describes the principal location of the risk as the state where it will be located during "the major portion of the insurance period." Restatement (Second) of Conflict of Laws § 193, cmt. b (1971). The location of the risk is easy to determine when an insurance policy covers an immovable object, such as a house. Even "in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question." *Id.* However, comment (b) recognizes that there are certain situations where the location of the risk has less significance in determining the state of

the applicable law, including (1) where the insured object moves from state to state and (2) where the policy covers a group of risks located in several states.  Section 193 thus teaches a positive correlation between the ability to locate a risk principally in one state and the significance of that contact in determining which state's law applies.

RTS and Ushe maintain that § 193 does not apply to this case because the tractor trailer was constantly on the move and the Wausau Policy covered a group of risks scattered across two or more states.  (Doc # 49, Pg ID 774-75.)  As to the tractor trailer being an object in motion, when automobiles are involved in insurance contract choice-of-law disputes, courts have typically concluded that the principal place of the insured risk is where the automobile was "'principally garaged' at the time the insurance policy was issued." *Bristol West Ins. Co. v. Whitt*, 406 F. Supp. 2d 771, 787 (W.D. Mich. 2005) (citations omitted).  As to the fact that the tractor trailer was covered under a group policy with risks located in several states, comment (f) to § 193 "provides that a multiple risk policy should be treated like a separate policy for each state where the policy incorporates state statutory form[s]." *Aetna*, 883 F. Supp. at 1107; *see also Meijer, Inc. v. Gen. Star Indem. Co.*, 61 F.3d 903 (6th Cir. 1995).  If a case involves one or both of these two circumstances, it may still be possible to determine the principal location of the risk, which dictates which state's law should be applied.  *See Aetna*, 883 F. Supp. at 1107.

Here, the principal location of the risk insured under the policy is Michigan. Ushe's vehicle is not "more or less constantly on the move from state to state," the first situation in which the principal location of the risk cannot be determined.  Restatement (Second) of Conflict of Laws § 193, cmt. b (1971).  In the Holt Lawsuit, Ushe testified at

his deposition that he drove mostly locally in Michigan and sometimes to Toledo, Ohio, but he did not do long hauls. (Doc # 45-4, Pg ID 714.) This hardly constitutes travel "more or less constantly. . . from state to state." Additionally, because an automobile is involved, the location where the car is principally garaged is indicative of which law to apply. *Bristol*, 406 F. Supp. 2d at 787. At the time the Wausau Policy was issued, Wausau understood that RTS's vehicles would be garaged in several states, including Michigan. (Doc #45-6, Pg ID 745.) Michigan certainly has an interest in insurance contracts that cover vehicles garaged in the state and operated by Michigan residents.

The circumstances in this case do not fit the second situation either. Here, the multiple risk policy incorporates state statutory forms. (Doc # 45-5, Pg ID 721-22.) Although the Wausau Policy technically covers "a group of risks that are scattered throughout two or more states," Restatement (Second) of Conflict of Laws § 193, cmt. b (1971), it should be treated "as if it involved [several] policies, each insuring an individual risk." Restatement (Second) of Conflict of Laws § 193, cmt. f (1971).

Under § 193, Michigan law should apply in this case. Although the insured risk was one of many within a multiple risk policy, it is considered insured by a single policy for the purposes of the choice-of-law analysis. Because the insured risk was garaged and contemplated to be insured in Michigan, any contract disputes arising out of the Wausau Policy will be governed by Michigan law. *See* Restatement (Second) of Conflict of Laws § 193 (1971).

**2. Michigan choice-of-law rules for tort claims**

The Michigan Supreme Court announced the analytical framework for tort conflicts of law in *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466 (Mich.

1997).  According to *Sutherland*, a court will apply Michigan law to a tort claim brought in Michigan unless a "'rational reason' to do otherwise exists."  *Id.* at 286.  *See also Wells Fargo Advantage Nat. Tax Fee Fund v. Helicon Assocs.*, 520 F. App'x 367 (6th Cir. 2013).  If no other state has an interest in having its law applied, "the presumption that Michigan law will apply cannot be overcome."  *Id.*  If a foreign state does have an interest, the court must then determine if "Michigan's interests mandate that Michigan law be applied, despite the foreign interests."  *Id.*  "Although this balancing approach most frequently favors using [Michigan's] law, Michigan courts nonetheless use another state's law where the other state has a significant interest and Michigan had only a minimal interest in the matter."  *Hall v. Gen. Motors Corp.*, 582 N.W.2d 866 (Mich. Ct. App. 1998).

    Here, there appears no "rational reason" to displace Michigan tort law.  *See Sutherland*, 562 N.W.2d 466.  In fact, RTS and Ushe have not even offered any rational reason to displace Michigan law for the tort counterclaims.  (*See* Doc # 37; Doc # 49.)  RTS and Ushe briefed choice-of-law rules for the contract claim only and focused solely on Indiana law as the appropriate controlling law in this case.  *Id.*  Regardless, this Court analyzes choice-of-law for the tort claim.

    Several factors weigh in favor of the application of Michigan law.  Indiana arguably has an interest in the case because RTS, one of the insureds under the Wausau Policy, is incorporated in Indiana and has its principal place of business there.  On the other hand, Ushe, also an insured under the Policy, resides in Michigan.  (Doc # 1, Pg ID 3.)  Additionally, as discussed above, the Policy itself covers risks located in Michigan.  (Doc # 1, Pg ID 6-7.)  Furthermore, Michigan is likely where the alleged

wrong – the bad faith failure to settle – occurred.  "Michigan courts consider the place where the injury occurred as the place of the wrong, and they treat the place of the injury as a significant factor in determining what law to apply."  *Stryker Corp. v. Ridgeway*, No. 1:13-CV-1066, 2015 WL 5308038, at *3 (W.D. Mich. Sept. 10, 2015). The alleged tort of bad faith failure to settle within the policy limits occurred at the Wayne County courthouse and mediation tribunal offices during the case evaluation hearings, pretrial settlement conferences, and trial, according to RTS's and Ushe's own counterclaims:

> 9.  The Jury Trial was originally scheduled for February 2, 2015.  In an effort to reach a settlement, Judge McDonald attempted to broker a settlement <u>at the final pre-trial conference</u> on January 30, 2015.
>
> 10.  <u>During the January 30, 2015, final pre-trial conference</u>, Rick Joslin, who was retained by Wausau to defend Reliable Transportation and Ushe, sent an email to Wausau and Reliable Transportation's counsel advising that Mr. Holt would accept $750,000.00 from Reliable Transportation and Mr. Ushe.  While Mr. Joslin was <u>still at the court house</u>, Reliable Transportation's counsel sent an email to Wausau demanding it to accept the current settlement demand of $750,000 and reminding Wausau it owed Reliable Transportation the duty to act in good faith and fair dealing.
>
> 11.  Wausau refused to protect Reliable Transportation's assets by refusing to settle the claim for $750,000.00 <u>at the January 30, 2015 final pretrial conference</u>.
>
> ***
>
> 13.  Judge McDonald conducted <u>another final pre-trial conference</u> on May 15, 2015.  Judge McDonald again attempted to broker a settlement.
>
> 14.  <u>During the May 15, 2015 final pre-trial conference</u>, Rick Joslin sent an email to Wausau and Reliable Transportation's counsel advising Mr. Holt would accept $900,000.00 from Reliable Transportation and Mr. Ushe. While Mr. Joslin was still at the court house, Reliable Transportation's counsel sent an email to Wausau demanding it accept the current settlement demand of $900,000.00...

***

>16. Kraig Lhotak, Reliable Transportation's General Manager, was its corporate representative <u>at trial</u>. Prior to jury selection, Mr. Lhotak informed Mr. Joslin and Wausau's representative <u>at trial</u> that Reliable Transportation demanded Wausau to settle the Holt Lawsuit at or within the $1,000,000 Policy Limits. During trial, Reliable Transportation repeatedly demanded Wausau to settle the lawsuit in order to protect Reliable Transportation's assets. Wausau had the opportunity to settle the claim for $1,000,000.00 on May 22, 2015 but again refused to protect Reliable Transportation's assets.

(Doc # 10, Pg ID 213-15; *see* Doc # 12, Pg ID 231-33 (emphasis added).) While the court recognizes that the ultimate decision to deny the settlement offer might have been made by persons in another state, no part of Wausau's alleged acts in failing to settle the Holt Lawsuit (a <u>Michigan</u> lawsuit) within the policy limits occurred in Indiana. Because Michigan's interests in this case outweigh any interests Indiana may have, the tort counterclaim will be governed by Michigan law.

## C. Conclusion

For the reasons set forth above, this Court declares that Michigan law controls the resolution of both the contract and tort counterclaims asserted by RTS and Ushe.

IT IS SO ORDERED.

Dated: August 5, 2016

              s/George Caram Steeh
              GEORGE CARAM STEEH
              UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 5, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---